UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID H. BAKER,

                        Plaintiff,

              v.

STEVEN GEROULD, et al.,

                   Defendants.

_____

DECISION & ORDER

03-CV-6558L

## PRELIMINARY STATEMENT

By order dated January 27, 2004, the above-captioned matter has been referred to the undersigned for the supervision of pre-trial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B).  (Docket # 15).  Plaintiff, David Baker ("Baker"), has filed suit against defendants Steven Gerould, David Egelston, Charles Johncox, James Tuffey, Donald Snell, Walter Heinrich, Erin Crotty and Lawrence Johnson.  (Docket # 1).  Currently pending before this Court is Baker's motion to disqualify the New York State Attorney General's Office from representing all of the above-named defendants. (Docket # 25).  For the following reasons, plaintiff's motion is denied.

## FACTUAL BACKGROUND

Baker is an employee of the New York State Department of Environmental Conservation (the "DEC") and currently works as a Supervising Environmental Conservation Officer, having attained the rank of Lieutenant.  (Docket # 1 at ¶ 4).  According to the Complaint, on March 6, 2002, another conservation officer under Baker's supervision was involved in a

snowmobile accident while on duty.  Baker was advised of the accident and, in turn, advised his superior, defendant Donald Snell ("Snell").  (*Id.* at ¶¶ 29-33).

The accident was thereafter investigated by defendant Steven Gerould ("Gerould"), and a report was filed indicating that poor visibility due to weather conditions had contributed to the accident.  As the supervisor of the officer involved in the accident, Baker filed a memorandum that included, among other things, the findings made by Gerould.  (*Id.* at ¶¶ 35-39).

One day after he received Gerould's original report, Baker received a revised report and a request by Gerould that the original be destroyed.  In his revised report, Gerould had removed the reference to the poor weather conditions.  Gerould also requested that Baker delete any references to the weather findings in his memorandum.  Baker claims that he responded by sending an e-mail message to Gerould, with a copy to Snell, as well as to defendants David Egelston ("Egelston"), a Colonel with the DEC, and Charles Johncox ("Johncox"), a Major with the DEC.  In the e-mail, and in subsequent communications, Baker questioned and protested the altering of his memorandum, claiming that it was illegal and unethical.  (*Id.* at ¶¶ 41-49).  As a result of his protest, Baker asserts, he was threatened by his superiors with charges of insubordination.  (*Id.* at ¶¶ 52-58).  Baker ultimately agreed to change his memorandum as requested, but indicated that if questioned about the incident, he would answer truthfully.  (*Id.* at ¶¶ 63, 65).

Shortly after this incident, Baker claims that he was informed that his chances of receiving a promotion to Captain had disappeared, despite having previously been advised that his chances were excellent.  (*Id.* at ¶¶ 67-68).  Indeed, the position of Captain was subsequently

2

awarded to Gerould, who, according to Baker, was less qualified than he.  (*Id.* at ¶¶ 72-76).

Baker further asserts that following his promotion, Gerould, as part of a conspiracy with the other

named defendants, repeatedly reprimanded him in retaliation for the above-described actions.

(*Id.* at ¶¶ 77-80).

Some time later, in the spring of 2004, defendant James Tuffey ("Tuffey"), the

Assistant Commissioner of the DEC, issued a report relating to the investigation of the accident

and the ensuing events.  In his report (the "Tuffey Report"), Tuffey recommended that

administrative action be taken against defendants Egelston and Johncox.  The Tuffey Report did

not recommend administrative or disciplinary action against any of the other defendants.

(Docket # 27, Exhibit B).

Baker filed this action on November 6, 2003, alleging violations of 42 U.S.C.

§§ 1983 and 1985.  (Docket # 1).  The Attorney General's Office has answered the Complaint on

behalf of all of the named defendants (Docket ## 6-11, 14) and, as of the date of this opinion,

continues to represent each of them.  Now pending is Baker's motion to disqualify the Attorney

General's Office.  (Docket # 25).

## DISCUSSION

Baker's motion alleges that two separate conflicts of interest require the

disqualification of the Attorney General's Office.  First, Baker claims that a conflict of interest

exists between the State of New York and the individually-named defendants.  Second, Baker

argues that conflicts of interest among the individual defendants preclude their joint

representation.  (Docket # 25).

It is well-settled that a lawyer's duty to his client is that of a fiduciary or trustee. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) (citing *Hafter v. Farkas*, 498 F.2d 587, 589 (2d Cir. 1974)).  The client is entitled to trust that, at least until the pending litigation concludes, he has his counsel's undivided loyalty as an advocate and champion and can "rely upon his undivided allegiance and faithful, devoted service." *Id.* (citations and internal quotation omitted).

Similarly, Disciplinary Rule (DR) 5-101(A) of the American Bar Association's Code of Professional Responsibility provides:

> A lawyer shall decline proffered employment if the exercise of his
> independent professional judgment in behalf of a client will be or
> is likely to be adversely affected by the acceptance of the proffered
> employment, or if it would be likely to involve him in representing
> different interests, except to the extent permitted under DR-105(c).

DR 5-101(A).  DR-105(C) permits multiple representation provided there is full disclosure and all interests can be adequately represented.  *See* DR 5-101(C) ("[a] lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each").  On this issue, the Code's Ethical Considerations caution that "[a] lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which the lawyer would be justified in representing in litigation multiple clients with potentially differing interests." EC 5-15.

Notwithstanding these concerns, the Second Circuit has declined to adopt any "single representation" rule requiring independent representation in all cases involving actual or

potential conflicts between multiple clients.  In *re Taylor*, 567 F.2d 1183, 1191 (2d Cir. 1977).

Rather, the court is charged with ensuring that each client is fully aware of any conflict and its

potential impact upon his or her interests and nonetheless desires to proceed with joint

representation.  *Id.*  Once that assurance is adequately provided, the court may not interfere with

or obstruct a party's knowing choice of counsel.  *Id.*

A. **Conflict of Interest Between the State and the Named Defendants**:  Baker

argues that a conflict exists between the interests of the State in this matter and the interests of

the individual defendants.  According to Baker, the State and the individual defendants each have

opposing incentives to shift liability to the other.

To analyze Baker's contention, it is helpful to begin with the Supreme Court's

decision in *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 693 (1978), and the

Second Circuit's later decision in *Dunton v. County of Suffolk, State of New York*, 729 F.2d 903

(2d Cir. 1984), analyzing how the *Monell* decision may result in potential conflicts among

defendants.  In *Monell*, the Court held that a municipality may be held liable under 42 U.S.C.§

1983 for injuries caused by its representatives taken pursuant to municipal policy.  This

possibility of municipal liability creates the potential for conflicting interests in cases in which

both the municipality and its employees are named as defendants.  Recognizing that potential

conflict, the Second Circuit has explained:

> A municipality may avoid liability by showing that the employee
> was not acting within the scope of his official duties, because his
> unofficial actions would not be pursuant to municipal policy.  The
> employee, by contrast, may partially or completely avoid liability
> by showing that he was acting within the scope of his official
> duties.  If he can show that his actions were pursuant to an official
> policy, he can at least shift part of his liability to the municipality.
> If he is successful in asserting a good faith immunity defense, the

> municipality may be wholly liable because it cannot assert the good
> faith immunity of its employees as a defense to a section 1983
> action.

*Dunton v. County of Suffolk, State of New York*, 729 F.2d at 907 (citing *Owen v. City of Independence*, 445 U.S. 622 (1980)).

Two critical distinctions exist between the scenario addressed by the court in *Dunton* and this case, both of which minimize any possibility of a conflict of interest. The first, and most obvious, is that Baker has not named a municipality as a defendant. Rather, he has named as defendants only the individual DEC officers and their supervisors who he alleges conspired to deprive him of his federally-protected rights. Thus, because the Attorney General's Office does not represent any municipality that may potentially have an interest conflicting with that of the defendants, disqualification need not be considered.

The second, and equally important, distinction between the case at bar and the above-cited authority is that Baker foresees a potential conflict between the individual defendants and the State of New York, not a municipality. Unlike municipalities, however, the State may not be subject to liability under Sections 1983 or 1985. The Eleventh Amendment of the Constitution acknowledges the sovereign status of the states by insulating them from suits by individuals absent their consent. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution") (internal quotation omitted).

In an apparently novel argument, Baker asserts that regardless of whether the State is a named party, the Attorney General's Office is statutorily obligated to represent the State's interests and that obligation poses a potential conflict with the interests of the defendants in this

litigation.  According to Baker, the State's indemnification obligation under New York Public

Officer's Law § 17(3)(a) (McKinney 2005) creates an incentive on the part of the State to seek to

reduce the amount of such payments.  Section 17 requires the State to pay any adverse judgments

against current or former state employees, provided the employee acted within the scope of his

authority and did not engage in intentional wrongdoing.  Because the State may refuse

indemnification upon a determination that the employee acted outside the scope of his duties,

Baker continues, the Attorney General's office – as the entity statutorily charged with

representing the State's interests, has a built-in incentive to argue against the employee's interest,

namely, by seeking to prove that if a constitutional violation in fact occurred, the employee

committed it outside the scope of his employment.

       Baker has not offered any evidence to suggest that the Attorney General's Office

will advance such an argument, either at trial or in connection with its evaluation of any request

for indemnification should liability be found.  Nor does this Court have any reason to question

that office's fidelity to its ethical obligations to defend vigorously the individual defendants in

this matter.  Indeed, while the State may have a pecuniary interest in limiting the amount of any

indemnification payment made by the State, to do so at the expense of its employees, many of

whom perform work for the State that frequently results in litigation, would appear short-sighted

and inimical to the State's broader interests.

       Baker nonetheless reads the Second Circuit's decision in *Dunton v. County of*

*Suffolk, State of New York*, 729 F.2d at 903, as requiring disqualification of the Attorney

General's Office in this case.  In that case, Dunton, a male employee of the County, accompanied

a co-worker, Angela Pfeiffer, to her car following a retirement party.  At the car, Dunton made

improper advances.  As he did so, Pfeiffer's husband, a member of the Suffolk County Police

Department arrived in his patrol car, pulled Dunton out of Pfeiffer's car and struck him

repeatedly.  Dunton subsequently filed a complaint against Officer Pfeiffer, his wife, Suffolk

County, and the Suffolk County Police Department.  The County Attorney represented both the

County and Officer Pfeiffer.  At trial, the County Attorney argued against Pfeiffer's interest that

Pfeiffer had acted as an irate husband, rather than as a law enforcement officer.  The jury

awarded compensatory and punitive damages against Pfeiffer on the battery claim.  *Id.* at 906.

Pfeiffer appealed the verdict, claiming that the County Attorney had failed to

represent him adequately because of his conflicting representation of Suffolk County.  In

reversing the judgment, the Second Circuit determined that a conflict of interest had existed

warranting the disqualification of the County Attorney and remanded the case for further

proceedings.  The court reasoned that because the municipality could avoid liability by

demonstrating that Pfeiffer was acting outside his official duties, which it in fact sought to do, a

conflict of interest existed between the parties requiring separate representation.  *Id.* at 906-907,

909.

Fundamental distinctions exist between *Dunton* and this case that lead me to

conclude that *Dunton*'s holding should not be extended to this case.  In *Dunton*, the plaintiff filed

suit against both Officer Pfeiffer, as an individual defendant, and the municipality of Suffolk

County.  As discussed above, municipalities may be held liable for money damages under

Section 1983, while the State may not.  *See Monell v. Department of Social Services*, 436 U.S. at

658.  The conflict in *Dunton* arose because either Pfeiffer or the municipality could possibly

avoid liability depending on whether Pfeiffer's actions were found to fall within his official

duties.  Nothing in that decision in any way suggests that the court would have found a conflict had the municipality not been named as a party; indeed, the court suggested that no such conflict would have existed had the municipality not been sued under Section 1983.  *Id.* at 907.

If this Court were to accept Baker's argument that the Attorney General's Office is conflicted from representing any current or former State employee whose right to indemnification depends upon a determination whether their acts were within the scope of their employment, then that office would be precluded from representing any individually-named defendant in virtually any Section 1983 cases.  Such a drastic and radical change does not follow, in my estimation, either from the *Dunton* decision or from the plaintiff's speculation that the Attorney General's Office will undermine its client's interests in a desire to minimize financial responsibility for the State's statutorily-imposed indemnification obligation.

B. **Conflicts of Interest Among the Individual Defendants:**  Baker also argues that conflicts of interest between and among the individual defendants preclude their joint representation.  Baker contends that the individually-named defendants have conflicting interests with one another, which will lead them inevitably to blame one another.

The Attorney General's Office disagrees and represents that all the defendants will rely upon the same defense.  It argues that Baker has alleged only one theory of liability as to all defendants – that they all approved a decision to deny him a promotion and that they conspired to retaliate against him for exercising his constitutional rights.  Relying on *Katz v. Morgenthau*, 709 F. Supp. 1219, 1227 (S.D.N.Y. 1989), in which the court stated that if differing theories of liability are applicable to each defendant, a conflict arises, the Attorney General's Office argues the converse: if a common theory of liability applies, no conflict may exist.

9

(Docket # 31 at 5).  *See Katz v. Morgenthau*, 709 F. Supp. 1219, 1227 (S.D.N.Y.), *aff'd in part, rev'd in part*, 892 F.2d 20 (2d Cir. 1989).  I do not follow that logic.[1]

In this case, while each defendant may defend himself by denying or challenging the government's proof of the existence of the alleged conspiracy, some of them may also argue alternatively that, even if an alleged conspiracy is proved, they were not a part of it.  For example, according to the Complaint, defendants Snell, Egelston and Johncox threatened Baker with insubordination if he did not remove certain references from his memorandum.  Subsequent to that incident, a report was filed by defendant Tuffey recommending administrative action against Egelston and Johncox.[2]  Considering the contents of the report, Egleston and Johnson may wish to discredit the Tuffey Report, while others, like Tuffey, may wish to use it to shift liability from themselves to Egelston and Johnson.[3]

Although I do not find that conflict is actual or inevitable here, it does appear to be a genuine and serious possibility and one that should be explained to each defendant, along with his or her right to request independent representation.  As the Second Circuit has cautioned, "[w]hen a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the prosecution of his interests."  *Dunton v. County of Suffolk, State of New*

---

[1]  Nor do I agree with the district court's conclusion in *Katz* that "if differing theories of liability are applicable to each defendant, a conflict of interest [necessarily] arises."  *Id.*

[2]  This decision does not address the admissibility of the Tuffey Report at trial.

[3]  The Attorney General's Office disputes Baker's characterization of the Tuffey Report and argues that the report does not provide a defensive advantage to any individual defendants in this case.  It further argues that the report's recommendation of administrative action against Egelston and Johncox was based only upon undue delay in investigating the snowmobile accident and not for any actions allegedly taken against Baker.  I do not find this distinction material in determining that Tuffey may seek to distance himself from defendants Egelston and Johnson with respect to Baker's claim that Tuffey conspired with them.

*York*, 729 F.2d at 908 (quoting *In re Taylor*, 567 F.2d at 1191).  Equally important is the client's

understanding of his right to be represented by conflict-free counsel.

In this case, during oral argument, the Attorney General's Office advised the

Court that it had contacted the individual defendants and advised them of the potential conflict.

The defendants were further provided the opportunity to confer with an outside attorney, at no

cost to them, for the limited purpose of seeking advice as to whether they would benefit from

independent counsel.  According to the Attorney General's Office, each defendant expressed the

desire for continued joint representation.  Although no reason exists to question the credibility of

such representations, the more prudent course in this case, considering the importance of

protecting the right to conflict-free counsel and the guidance provided by the above-cited

authority, is to require an affirmative waiver by each of the defendants.  *See Drag Racing Tech.,*

*Inc. v. Universal City Studios, Inc.*, 2003 WL 1948798, *4 (S.D.N.Y. 2003) ("[b]ecause

defendants have chosen to pursue a unified defense against plaintiff's charges, and because the

defendants have demonstrated their informed consent to joint representation [through

declarations submitted to the court], permitting them to go forward with joint representation does

not sufficiently increase the risk of trial taint"); *Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp.

917, 925 n.6 (N.D.N.Y. 1987) (where parties have "freely and intelligently" consented to joint

representation, the court "should refrain from paternalistically infringing on a party's right to a

lawyer of his choice absent compelling factors indicating that the attorney's loyalty to his client

has been incontrovertibly compromised").

Accordingly, the Attorney General's Office is directed to file with the Court,

within twenty-one days of this ruling, a declaration from each of the defendants affirming that he

or she has been adequately advised of and understands the potential conflict of interest, as well as his or her right to conflict-free counsel, and has chosen continued representation by the Attorney General's Office.

## **CONCLUSION**

For the foregoing reasons, it is my Decision and Order that Baker's motion to disqualify the New York State Attorney General's Office from representing all of the defendants in this matter **(Docket # 25)** is **DENIED**, provided that each defendant files with this Court a declaration as described above.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September  29  , 2005.

12