UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID H. BAKER,


                                    Plaintiff,

                                                          DECISION AND ORDER

                                                          03-CV-6558L


                    v.

STEVEN GEROULD,
DAVID EGELSTON,
CHARLES JOHNCOX,
JAMES TUFFEY,
DONALD SNELL,
WALTER HEINRICH,
ERIN CROTTY,
LAWRENCE JOHNSON,



                                    Defendants.

_____


        Plaintiff David Baker ("Baker"), an employee of the New York State Department of

Environmental Conservation ("DEC"), commenced the instant action against eight of his present and

former chain-of-command supervisors, Steven Gerould, David Egelston, Charles Johncox, James

Tuffey, Donald Snell, Walter Heinrich, Erin Crotty and Lawrence Johnson.  Baker, who was initially

employed by the DEC as a Supervising Environmental Conservation Officer, alleges that the

defendants retaliated against him on the basis of his engagement in constitutionally-protected speech,

in violation of 42 U.S.C. §1983, 42 U.S.C. §1985, and the First Amendment to the United States

Constitution, U.S. CONST. Amend. I, Title VII of the Civil Rights Act of 1964.

Defendants now move for summary judgment dismissing Baker's claims pursuant to Fed.

R. Civ. Proc. 56 (Dkt. #103). For the following reasons, defendants' motion is granted in part.


## FACTS

Plaintiff was initially hired by the DEC in April 1983, as an Environmental Conservation

Officer ("ECO"). In 1987, Baker was promoted to the position of Supervising ECO with the rank

of Lieutenant. As a Supervising ECO, Baker's duties included the supervision and evaluation of

subordinate officers, including the review of paperwork such as accident reports, the investigation

of accident scenes to determine whether the accidents were preventable, attendance at meetings with

prosecutors to discuss cases, and meetings with the Regional Captain to discuss the activities of

subordinate ECOs.

On or about March 6, 2002, while Baker was employed as a Supervising ECO, one of

Baker's subordinate officers, ECO Bruce Bullock, crashed his snowmobile into a ditch. Bullock was

a member of the marine and Off Road Enforcement team, whose activities were directed from

Albany by defendant Johncox.

Bullock contacted Baker and advised him that he'd been in a minor accident. After

consulting with defendant Snell, the Regional Captain, Baker advised Bullock to transport the

snowmobile back to the regional office in Avon, New York. After inspecting the damage, which

was more severe than the officers had believed, Snell asked Baker to conduct an on-site investigation

of the accident scene.  Because Baker was unable to do so at that time, Snell directed defendant Gerould to conduct the on-site investigation instead.

Later in the afternoon on March 6, 2002, Gerould went to the scene and prepared a memorandum describing his observations, which he submitted to Baker, Snell and Johncox. Gerould's memorandum noted: "[t]he photos indicate that from a distance the ditch was not visible. It became evident to me at approximately 100 feet.  Although it may have been very different when the entire area was covered with snow [earlier in the morning]."

As Bullock's direct supervisor, it was Baker's job to investigate further and ultimately assist in the determination of whether the accident had been preventable.  Baker reviewed Gerould's report, investigated the accident scene, and then filed a preliminary "investigative package" and "summary memorandum" with his own direct superior, Captain Snell.  The summary memorandum commented that, "Lt. Gerould states in his memo that the ditch was not observable beyond 100 feet.  Given these factors ECO Bullock would have had about 1.94 seconds to reacts upon observing the ditch."

On or about March 7, 2002, defendant Major Johncox, allegedly at the direction of defendant Colonel Egelston (the Assistant Director of Law Enforcement), ordered Gerould to remove the investigatory observations concerning the visibility of the ditch from Gerould's memo, advising that it would be "cleaner at arbitration" if the observations were left out.  Gerould deleted the subject sentences and submitted a revised report to Baker via e-mail, with copies to defendants Egelston, Johncox and Snell.  Gerould asked Baker to destroy his initial memo, containing the observations about the visibility of the ditch.

After reviewing Gerould's revised memo and instructions, Baker sent a reply e-mail to all recipients of Gerould's revised memo, asking Gerould why portions of the initial memo had been deleted, and explaining that because Baker had relied upon the initial memo in preparing his own investigatory report, Baker wanted to be sure that it was accurate. Immediately afterwards, Snell called Baker and, allegedly at the behest of Johncox, instructed Baker to delete those portions of his own report that referred to Gerould's. Baker objected to the order as unethical and potentially criminal, on the grounds that he was being asked to remove material information from an official report. When Baker inquired why Snell wanted the report redacted to remove exculpatory information, Snell replied that Albany "was out to hang Bullock," which Baker interpreted to mean that the DEC intended to fire Bullock, and was seeking to trump up grounds to do so based upon the accident. Snell denies having made such a statement, testifying that although he had been aware that Bullock was "a person of concern" for officers in Albany, he had not shared that information with Baker. (Dkt. #141, Att. 8 at 68).

Baker objected to the order to both Snell and Johncox. Johncox accused Baker of near insubordination and ordered Baker to prepare a memorandum explaining why he had objected to the order. Baker did so, and stated that he felt he had been ordered to remove material exculpatory facts from an official report, and thus to submit a false report, to the DEC. Baker testified that he had nonetheless complied with the order rather than risk losing his job.

Baker thereafter complained to Gerould and Bullock about the redaction order, and offered to testify at the arbitration on Bullock's behalf. Baker also communicated with his union representatives concerning the order, and reported his concerns to New York State Senator Jim Alesi.

Defendants Assistant Commissioner Tuffey, and Environmental Conservation Investigator Major Heinrich, were also made aware of Baker's allegations.

At the time of Bullock's accident, Baker was at the top of the civil service list for promotion to Captain. Several days later, Snell informed Baker that his chances for advancement were now "zero" because of Baker's objections to, and complaints about, the redaction order. Approximately two weeks later, Snell retired, and upon the recommendations of Snell and Johncox, Gerould was made "acting captain" of the region. Individuals involved in effecting Gerould's promotion included defendants Egelston and Lawrence Johnson, a Director of Law Enforcement.

In August 2002, the DEC sought applications to fill Snell's position permanently. On October 9, 2002, Baker, Gerould and others were interviewed for the Captain position by a panel which included defendants Egelston, Johncox and Heinrich. Although not the DEC's normal policy, the interviewing committee permitted candidates to submit credentials only for the preceding five years, thus excluding from their consideration the majority of Baker's experience. Although Baker was first on the civil service list, had more seniority and had higher educational credentials than Gerould, Gerould was selected by the committee and promoted to the Captain position in 2002. The promotion was approved by defendants Johnson, Tuffey and Commissioner Erin Crotty.

Baker alleges that after Gerould was promoted to Captain, Gerould and other defendants harassed him by not allowing him to work overtime on opening day of deer season or teach ethics, as he had done in the past, and by reprimanding him for insignificant infractions such as wearing long-sleeved shirts, having mud on his boots, and not wearing his hat when walking from his car into the office.

On November 15, 2002, Bullock was served with a Notice of Discipline, charging him with misconduct relative to the March 6, 2002 snowmobile accident.  Bullock disputed the charges, and an arbitration hearing was conducted May 28, 2003 and June 19, 2003.  Baker testified at the hearing on behalf of Bullock and the union, describing how he had been ordered to remove exculpatory information from his official report.  After the hearing, the arbitrator issued her decision, and concluded that the disciplinary charges against Bullock were unfounded.  In weighing Baker's remarks, she noted that "[h]is testimony regarding his role in this incident and its aftermath was credible," and speculated, "[i]n fact, by fully testifying as to what happened in the investigation, he may have further jeopardized his career opportunities in the Department." (Dkt. #133, Att. 1, Exh. F at 7).

After the arbitration decision, Baker followed up with the union, and was advised that the union would be contacting the media as well as the Inspector General's Office.  Both actions were taken, and the Inspector General's Office commenced an investigation.

In connection with the Inspector General's investigation, defendant Tuffey conducted his own investigation.  Although his undated written report notes that he found no evidence of a retaliatory motive with respect to the denial of a promotion to Baker, Tuffey concluded that Johncox and Egelston had acted improperly with respect to the redaction order, and recommended that disciplinary action be taken against them.   (Dkt. #133, Att. 1, Exh. I).

In 2005, Baker again interviewed for a Region 8 Captain position.  After being interviewed by a panel which included Johncox, Baker was not offered the position.  Johncox testified that he

had recommended a different candidate, based in part upon negative assessments of Baker conveyed by defendants Egelston and Gerould. (Dkt. #106, Att. 8 at 136-137).

Plaintiff initially commenced this action against the defendants in November 2003, and amended his complaint in February 2006, to add claims relating to a 2005 denial of promotion. The amended complaint alleges that the DEC unlawfully retaliated against Baker for voicing his objections to Johncox's orders to redact his investigatory records concerning Bullock's accident. Baker alleges that he was denied opportunities for promotions in both 2002 and 2005, and that his employment was generally made more difficult. The defendants now move for summary judgment dismissing the Complaint in its entirety, on the grounds that Baker has failed to establish that he engaged in constitutionally protected speech, has not alleged personal involvement by each defendant in the constitutional deprivations, and cannot overcome the defendants' defense of qualified immunity.

## **DISCUSSION**

### I.      **Standard of Review**

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*.

When considering a motion for summary judgment, the Court must construe the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

To defeat a properly supported summary judgment motion, the non-movant may not simply raise "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993), but must offer evidence setting forth specific facts that show that there is a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

## II.    Baker's First Amendment Retaliation Claim

Baker's cause of action for violation of the First Amendment, pled under the auspices of Section 1983, is asserted against all of the defendants.

"To survive summary judgment on a section 1983 First Amendment retaliation claim a plaintiff must demonstrate that he engaged in protected speech, and that the speech was a substantial or motivating factor in an adverse decision taken by the defendant." *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006). Where the plaintiff is a public employee, the plaintiff must initially establish a *prima facie* case by showing that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he suffered an adverse employment action; and (3) the speech was at least a substantial part or motivating factor in the adverse employment action. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006). *See also Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960 (2006) ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications

from employer discipline"); *Brewster v. City of Poughkeepsie*, 434 F. Supp. 2d 155 (S.D.N.Y. 2006) (same).

Once plaintiff has established a *prima facie* case of First Amendment retaliation, a government defendant may rebut it by (1) demonstrating by a preponderance of the evidence that it would have taken the same adverse action regardless of the protected speech, or (2) showing that the plaintiff's speech was likely to disrupt the government's activities, and that such disruption was sufficient to outweigh the value of the plaintiff's constitutionally protected expression. *See Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004).

Initially, defendants do not dispute that plaintiff's speech, which concerned allegations of misconduct by public officials, addressed a matter of public concern. However, defendants argue that plaintiff cannot satisfy his burden to demonstrate that his speech was made as a citizen, rather than in the course of his official employment duties. *See Garcetti*, 547 U.S. 410, 422 (where a plaintiff engages in speech "that is part of what he . . . was employed to do," or the speech arises by his "[going] to work and perform[ing] the tasks he [i]s paid to perform," the plaintiff is engaging in official communications, not entitled to the customary protections of the First Amendment). Defendants argue that because Baker's preparation of the "investigative package" and "summary memorandum" were within the scope of his employment duties, his retaliation claims must be dismissed.

In so arguing, defendants mischaracterize the speech at issue. While Baker's preparation of the investigative report concerning Baker's accident was manifestly and undisputedly within the ambit of his employment, that is not the speech which Baker alleges to have been the impetus for

defendants' retaliatory activity.   Rather, it was Baker's objections to the redaction order, his

questioning of that redaction order, testimony at Bullock's arbitration, and contacts with the union

and Senator Alesi which form the basis for his claims.   As such, Baker urges that the facts of this

case more closely parallel those of several "whistleblower" cases than those of *Garcetti*.   That line

of cases generally holds that:

> [t]he Supreme Court's narrow "hold[ing] that when public employees make
> statements pursuant to their official duties, the employees are not speaking as citizens
> for First Amendment purposes," *Garcetti*, 126 S.Ct. at 1960, should not be read to
> overrule all First Amendment whistleblower protection cases by generally
> categorizing whistleblowing as part of employees' employment obligations.

*Walters v. County of Maricopa, Ariz.*, 2006 WL 2456173 at *14 (D. Ariz. 2006).

Upon review of the facts and circumstances surrounding Baker's speech, I conclude that there

are, at the very least, material questions of fact concerning whether Baker's speech was made in his

capacity as a citizen.   It is undisputed that objecting to and publicly exposing a superior's misconduct

– precisely the kind of speech in which Baker alleges he engaged and in for which he was retaliated

against –   was not part of Baker's official duties.   *See Rosenblatt v. City of New York*, 2007 WL

2197835 at *6 (S.D.N.Y. 2007) ("official duties" exception is inapplicable where neither the

plaintiff's job description nor the record suggest that a plaintiff's scrutiny of her supervisors or

reporting to eternal investigators was expected of someone in her position).   Moreover, even

assuming *arguendo* that Baker's objections and complaints within the DEC were somehow

connected with his duty to investigate Bullock's snowmobile accident, the speech at issue was not

limited to internal communications within the DEC.   It included Baker's serial contacts with the

union, multiple contacts with his senator, and his public testimony at Bullock's arbitration.   There

is no evidence that such communications were part of Baker's job duties, and the mere fact that

Baker's public complaints related to misconduct within the DEC, his employer, does not compel a

finding that the speech occurred *in the course* of his employment. *See generally Paola v. Spada*, 498

F.Supp. 2d 502, 508-509 (D. Conn. 2007) (declining to find as matter of law that a state trooper's

complaints concerning another officer's submission of a false report was made as part of the

trooper's job duties); *Skrutski v. Marut*, 2006 WL 2660691 at *9-*10 (M.D. Pa. 2006) (same).

With respect to the second prong of the analysis, "[i]n the context of a First Amendment

retaliation claim, [the Second Circuit has] held that '[o]nly retaliatory conduct that would deter a

similarly situated individual of ordinary firmness from exercising his or her constitutional rights

constitutes an adverse action.'" *Zelnik*, 464 F.3d 217 at 225-226, *quoting Washington v. County of

Rockland*, 373 F.3d 310, 320 (2d. Cir. 2004). Under this standard, "[a]dverse employment actions

include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand,"

although this list is not exhaustive, and "lesser actions," such as negative evaluations, false

accusations, and undesirable job assignments "may also be considered adverse employment actions."

*Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). *See also Dillon v. Morano*, 497 F.3d 247, 251

(2d Cir. 2007). Baker has clearly demonstrated that he suffered adverse employment actions, to wit,

the denial of promotions to a Captain position in 2002 and 2005 which would have resulted in higher

pay and more significant responsibilities.

Whether the reprimands and undesirable assignment changes that Gerould is alleged to have

effected against Baker following Gerould's 2002 promotion to Captain comprise an adverse

employment action is a much closer question. "A plaintiff cannot support . . . a determination [that

an act is an adverse employment action for First Amendment retaliation purposes] unless he can show that an alleged act of retaliation is more than de minimis." *Zelnik*, 464 F.3d 217, 226, *citing Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999). Here, Baker alleges that Gerould retaliated against him by making his job more "difficult," issuing reprimands for minor infractions and making undesirable changes in Baker's assignments and/or schedule. Construing the evidence in Baker's favor, I find that Baker has narrowly managed to demonstrate that such actions might "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," and that his speech concerning the redaction order was a motivating factor in those actions. *Zelnik*, 464 F.3d 217 at 225-226. As such, I decline to dismiss Baker's retaliation claim based on "harassment" at this juncture.

Turning once again to Baker's retaliatory failure to promote claims, Baker has adduced some evidence to suggest that his speech was a substantial or motivating factor in the decisions not to promote him. *See  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). It is undisputed that each of the defendants had been informed of Baker's complaints concerning the redaction order, and, to varying degrees, were aware of Baker's activities to publicize his objections through the union and the media, and his testimony in the Bullock arbitration. At the same time, defendants Egelston, Johncox and Heinrich departed from the DEC's usual policies in choosing other candidates for promotion to Captain, in one case disallowing candidates from submitting credentials older than five years, ensuring that Baker's superior seniority and experience would be a nullity, and ignoring Baker's top position on the civil service list in both instances. *See Dillon*, 497 F.3d 247 at 252 ("departure from the usual hiring practice provides evidentiary support . . . that the

true reason for [an adverse employment action] was retaliation"); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312-313 (2d Cir. 1997) (same). Baker alleges, and defendants do not dispute, that the promotion decisions were approved by defendants Johnson, Tuffey and Crotty.

Furthermore, "[a] plaintiff may establish causation indirectly by showing his speech was closely followed in time by the adverse employment decision." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006). Here, Baker was denied promotion to the acting Captain position just two weeks after voicing his initial objections to Snell's order, and was denied appointment to the position on a permanent basis five months later.

Most significantly, defendants appear to concede the point. Baker testified that Snell explicitly told Baker that because of his objections to the redaction order, "your chance[s] of getting promoted in this organization are zero." Dkt. #106, Att. 1 at 54. Snell testified that he had advised Baker to "do what he was told to do" with respect to the redaction order because failure to do so could impact Baker's future with the DEC, and had multiple conversations with Baker to the effect that, "he was bringing up this illegal thing . . . I felt that his protests, if he went on with these protests, it was just another thing that he could add to his long of list of reasons why he may not be promotable . . . this was . . . just another situation in which [Baker] wasn't putting himself in favor with anybody." Dkt. #106, Att. 4 at 54-57.

Based on the foregoing, I find that Baker has set forth a *prima facie* case of retaliation in violation of the First Amendment with respect to his failure to promote claims, and that defendants have failed to prove that the DEC would have denied Baker the 2002 and 2005 promotions in any case. There has also been no showing that Baker's speech was so disruptive as to outweigh the value

of its constitutional protections.   *See Cobb*, 363 F.3d 89 at 102.   Accordingly, defendants' motion

to dismiss Baker's First Amendment retaliation claims is granted with respect to Baker's retaliation

claim against Gerould concerning alleged reprimands and changes to his duties, and is otherwise

denied.

### III.   DEC's Qualified Immunity Defense

Defendants also claim that, even if Baker's First Amendment retaliation claims are supported

by sufficient evidence to survive summary judgment, they are nonetheless entitled to qualified

immunity.   The doctrine of qualified immunity shields government officials from liability for civil

damages where their performance of discretionary functions does not violate "clearly established

statutory or constitutional rights of which a reasonable person would have known."   *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).

Once the defendants claim the affirmative defense of qualified immunity, the burden shifts

to the plaintiff to demonstrate that the defendants are not entitled to qualified immunity.   *See Myers*

*v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005).   In determining whether qualified immunity applies, the

court may first consider whether "the facts alleged show the [defendant's] conduct violated a

constitutional right."   *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*,

____ S. Ct. ____, 2009 WL 128768 at *9 (2009) (holding that although "the sequence set forth [in

*Saucier*] is often appropriate, it should no longer be regarded as mandatory").   If the plaintiff

establishes that such a violation occurred, the court can examine "whether the right was clearly

established . . . in light of the specific context of the case, not as a broad general proposition."

*Saucier*, 533 U.S. 194 at 201.   A plaintiff may show that a right is "clearly established" by: (1)

- 14 -

identifying analogous case law establishing the right; or (2) showing that the conduct in question was

"so egregious" that no reasonable person could have believed that it would not violate clearly

established rights. *See Hope v. Pelzer*, 536 U.S. 259, 265 (2002)*; United States v. Lanier*, 520 U.S.

259, 265 (1997); *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001).

Whether a right was "clearly established" at the pertinent time is generally a question of law.

*See Crawford-El v. Britton*, 523 U.S. 574, 589 (1998); *Mitchell v. Forsyth*, 472 U.S. 511, 528

(1985); *Harlow*, 457 U.S. at 818.  However, whether a official would have reasonably believed that

his conduct did not violate a clearly established right, is a mixed question of law and fact which

requires a particularized focus on the salient facts of the case.  *Kerman*, 374 F.3d at 109; *Lennon v.

Miller*, 66 F.3d 416, 422 (2d Cir. 1995).  Where, as here, there is no dispute as to the material facts,

the question of reasonableness may be appropriately determined by the Court.  *Kerman*, 374 F.3d

at 109; *Lennon*, 66 F.3d at 421.

Defendants contend that prior to 2006, it was not clearly established that Baker's speech,

which related to his employment duties and supervisory responsibilities, was constitutionally

protected.   However, defendants have offered no case law or other authority to support that

proposition, nor was there a dearth of relevant law prior to 2006.  To the contrary, as plaintiff argues,

"for decades the courts have 'consistently held that while the government enjoys significantly greater

latitude when it acts in its capacity as employer than when it acts as a sovereign, the First

Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of

their protected speech.'" *Rosenblatt v. City of New York*, 2007 WL 2197835 at *11 (S.D.N.Y. 2007),

*quoting Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001).  Defendants simply cannot credibly claim

that as of 2006, they were unaware that retaliating against Baker for speaking out against what he viewed as corruption by public officials would not impinge on Baker's constitutional rights.

Defendants also argue that Baker has failed to sufficiently allege that each defendant was "personally involved" in the constitutional deprivations charged in the Amended Complaint, and urges that the claims against Tuffey, Snell, Heinrich, Crotty and Johnson should be dismissed on those grounds. However, Baker alleges – and defendants largely do not dispute – that each of those defendants played a role in making and approving the decisions not to promote him in 2002 and 2005. I therefore find that Baker has sufficiently alleged personal involvement by those defendants to withstand the present motion for summary judgment.

### III.   Baker's Conspiracy Claim

Baker's second cause of action, pursuant to 42 U.S.C. §1985(2), asserts that defendants conspired to violate Baker's constitutional rights. In response to defendants' motion for summary judgment, plaintiff has voluntarily withdrawn that claim.

### CONCLUSION

Defendants' motion for summary judgment (Dkt. #103) is granted, in part. Plaintiff's cause of action for conspiracy pursuant to 42 U.S.C. §1985(2), which he has voluntarily withdrawn, is accordingly dismissed. The remainder of defendants' motion for summary judgment is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        February 4, 2009.

- 16 -